Please the court. My name is Catalina Gracia, and I represent the petitioner, Mr. Andara-Ponce. At this time, I'd like to reserve two minutes for rebuttal. Your Honor, this case presents jurisdictional issues, specifically whether the decision by the immigration judge and the Board of Immigration Appeals subsequent to DHS's administrative order of removal pushed the deadline out to file a petition for review with this court. We hold that it does. It's nonsensical to require the petitioner to file a petition for review prior to either an adverse credible fear finding or a denial of withholding a removal. The petitioner is not challenging the order itself, but rather seeking relief from the final order in the form of deferment via the Convention Against Torture. This court has previously cited, stating Ayala, that the court has jurisdiction over petitions for review from adverse credible fear determinations. In this case, the petitioner did not have an adverse credible fear determination. He had a favorable credible fear determination, so it wouldn't follow that he is in a lesser position than the petitioner with the adverse finding. Let me ask you this. In this case, the final administrative removal order was issued in 2019. In your experience, was the timing of that normal, or do you usually see these orders issued later in the immigration proceedings? Your Honor, this case is unique. Actually, administrative removal orders are rare. In this case, the petitioner received an administrative removal order from DHS because he had been convicted of a serious felony. And so prior to his parole from prison, DHS, the Department of Homeland Security, issued an NTA first, and then a few weeks later, they issued a final removal order citing the aggravated felony. So this is actually not something that we see often. And the way to challenge an administrative removal order is by requesting a credible fear interview and requesting a hearing before an immigration judge on whatever available relief there is, where applicable. Is there any challenge to removability? In this case, there's no challenge to removability. What would you have done? If the government is correct on its jurisdictional point, what were you to have done? You should have sought a petition for review from this order back in 2019, even though you weren't actually challenging the order on its face? Yes, Your Honor, and that's what doesn't make sense. So based off what the government is saying, we should have filed a petition for review immediately after receiving the removal order. But that doesn't make sense because we're not challenging the removal order itself. Rather, we're seeking relief from the removal order in the form of CAT, which is simply deferring the final order, not challenging or arguing that that order is not valid. So in this case, we would have had to file the appeal with no basis. There's no BIA decision. There's no immigration decision to appeal. We'd simply be appealing the removal. I guess you would have filed it saying this is a placeholder. I'm filing this and please stay it while I go and pursue deferral under CAT. That's, I guess, what the government is saying. Maybe you should have done. I guess that's what the government's saying. But again, that would then cause this court to be inundated with a bunch of cases that have no have no actual basis just for just to satisfy this 30 day timeline that DHS has imposed. And this timeline doesn't. What do you think? What is your time limit for challenging the adverse CAT decision? Where do you where do you find your timeline for challenging that? So for challenging the adverse CAT decision from the immigration judge, your honor? Yeah. But we get that timeline from the immigration judge. It's 30 days. We have 30 days to appeal. And that 30 days. Yes, your honor. Where do you get that from? The immigration judge. Where do you get the 30 day limit from? Your honor, I understand. I believe that's in the INA, that 30 day time limit has been stated. Isn't that being that relates to the final order of removal? Well, that depends, your honor. The argument here from the government is that the final order was issued in 2019 and that the judge's order is not a final order. It's separate and apart from the final administrative removal order. So our position is that those the 30 day that started initially after the administrative removal order should have started the clock for seeking some sort of some sort of appeal, some mechanism for appeal, in this case, requesting a credible fear interview, which the petitioner did do or requesting a withholding only hearing from the immigration judge with which the petitioner did do. So I don't believe that the only way to satisfy that 30 day timeline is by filing a petition for review with this court. That would ultimately just result in this court having a bunch of cases with as placeholders, but no actual basis, nothing for this court to review to base any decision on. And so that that's where this this argument by the government fails. It just doesn't make sense that that was the intent of the Supreme Court. My understanding is that the government is citing Nasrallah and Johnson in their jurisdictional argument, but I don't believe that that's what the Supreme Court meant to meant to impose on petitioners. It's simply saying that a final order is a final order if it's issued by the administration. And again, we're not challenging that final order. We're seeking to simply defer it to allow the respondent potential relief from torture. And with stakes that high, I don't believe that a 30 day timeline was meant to essentially trick petitioners into missing their opportunity to seek relief. I don't think that that was the intent. So you're just your position is that. When the BIA proceedings concluded, that triggered a 30 day clock, right, that triggered a 30 day clock again, that didn't trigger a final order because the final order was already in place. But when the BIA issued their decision that triggered the 30 day clock by which to file a petition for review with this court and that is your position, it's essentially tied to the final order because you were at the order of removal because you were seeking deferral of that order in the before the BIA and the IJ. Correct. And your honor, I guess this would be analogous to having 30 days, for example, to file a brief with this court. If we we do initially have the 30 days, but we are we do have the ability to request an extension of that time if the proper motion is filed. In this case, we can argue that the proper motion to extend the initial 30 days was filing a request for a credible fear hearing or by filing withholding only proceedings with the immigration judge. Both were done in this case. And so I don't believe that the petitioner simply gave up any any appellate right and loses all due process just because of that 30 day timeline. What about the actual merits of this? Assuming it's timely, is what are the merits of the claim? Well, your honor, I believe that the immigration judge did hold that the the petitioner's fear of returning to Honduras was subjectively valid. She did find him to be credible. She did believe that he had a legitimate fear of returning to Honduras and believe that he would be tortured if he was returned to Honduras. And, you know, a potential issue there is whether his argument that the government would either stand by or simply not assist him in protecting him from torture is the result of a corrupt government. And so it doesn't amount to acquiescence or a result of simply an inability to assist. But either way, the threats we're talking about were were the ones from 20 years ago. Yes, your honor, and his argument wasn't weren't based on threats that he received previously, it was based on country conditions reports. That cited the conditions in Honduras, the trouble with the government controlling the gangs there, the issues with the jail system in Honduras. The fact that my client is, unfortunately, a person with criminal history and has tattoos that are related or representative of the Mexican mafia. And his argument was that if he was returned to Honduras, he would be subject to torture there because of these markings and because of his criminal past. It didn't explain. He has the Mexican mafia markings. So then the 18th Street gang would torture him. And the next and their nexus to the government is the government is incapable of doing anything. Or the government is so corrupt and involved with the gangs themselves that they would not do anything. And there is, you know, corruption is cited in the country conditions report. And I believe that the judge does make mention of that, that there's corruption in the Honduran government, but that, you know, there's attempts being made to to overcome that corruption and that there's evidence by, you know, the number of people that are in custody and in proceedings in Honduras that show that the government's trying to combat corruption. But I don't think that that necessarily follows because those individuals could be in custody because the government is corrupt and threw them in jail. The country conditions report says that there is some corruption in the police, in the security forces. But the government has taken steps to investigate and punish the abuses. And. So. But not erratic is what the IJ was relying on, that the government is attempting to get this under control, even if there is some corruption. Right. But that risk of some corruption could subject my client to torture. And that's a big risk. Is that enough? Is that enough to have the appropriate nexus to government acquiescence or acceptance of this situation? Well, your honor, maybe not standing alone, but the fact that my client is also a person that on his face will be susceptible to attention, negative attention by gangs, that in conjunction with the fact that there is some corruption, I think rises to the level of different things. One is whether he's going to be tortured. The other is whether the you can attach that to governmental activity. There's two different things. The fact that he might be tortured is not this is not the same as whether the government's responsible. And and here it turns on his testimony that he believes he will be tortured because of his tattoos and because of the fact that whatever corruption there is in Honduras is tied to the gangs. And those are the individuals that will be seeking to torture him or or punish him for his affiliation with the Mexican mafia. And that's his concern there. So whether that rises. Whether that rises to the level of seeking being granted the relief that he's seeking. We believe that it does, your honor. There's a high risk that he would be tortured if he was returned to Honduras. And he's established that by credible testimony. He cited the country conditions report. And there's a direct tie to his tattoos, his his affiliation tattoos and the fact that the controlling gangs in Honduras will have will take issue with that. OK, so you're basing the chance of torture more on the Mexican tattoos than his taking any stances against the 18th Street gang in prison. Well, no, I think it's equal, your honor. I think here it would be 50 50. Both of those things, if one of those didn't exist, then his torture would be unlikely. But the fact that both are present are what causes concern in this case. The fact that. It appears that he will take a stance against the gang members because of his tattoos, that's how they'll perceive him, whether or not he'll actually take a stance. I couldn't say, but he will appear to take a stance because of those tattoos. The fact that he comes with a criminal history, you know, I'm unclear if the individual who he murdered was a member of 18th Street. I know that there was a it was a gang related murder. So there are concerns for him based off his appearance. And then in conjunction with the fact that there's corruption there, and it's very likely that 18th Street is controlling the local police and government there and that he'll find it very difficult to seek protection from the government in Honduras. Do you want to say some time for rebuttal? Yes, Robert. Thank you. OK, thank you. Let's hear from the government. Good morning, Your Honors. Counsel, may it please the court. My name is Rob Stalzer. I'm here on behalf of the AG. Your Honors, our primary argument relates to jurisdiction. I know you were discussing that with my sister colleague. We recognize that this is a change in a position and that change is based on the Supreme Court statements in Nasrallah and Johnson against Guzman Chavez, just because the court has now made it clear that a withholding, a grant of withholding or a denial of withholding or a grant of deferral of removal or denial of deferral removal doesn't affect the final order of removal. And we see that in this case, right? You can turn to the administrative record to the immigration judge's decision. The immigration judge in this case doesn't issue a removal order. It simply says this case is returned to DHS because it was DHS who issued the removal order. And that was final when DHS issued it in 2019. Is there anything is the timing of the removal order here unusual as compared to the mine run of cases? Was it issued earlier in the process than it usually is? I don't think it was issued early in the process. I agree. I agree with Ms. Garcia that it it came about because petitioner was getting paroled. He had a very lengthy prison sentence. He was getting out. And so DHS there initiated these proceedings by issuing the final order of removal. And that was really why it was the timing occurred as was they simply saying, OK, you're getting out. He had been approved for parole by the state of California. And DHS said, well, actually, we want to remove you from the country. I guess what I'm trying to understand is the import. Of the implications of this argument, because we have a lot of cases, and I'm sure you do, too, where somebody is ordered removed. They're not challenging removability. They're not seeking asylum. The claim in front of the BIA is limited to withholding of removal and cat or one or the other. And then within 30 days of that decision, they petition for review. Those have always been regarded as timely. Is your position that none of those are timely? No, I think the ordinary I think what you're describing is an ordinary case that's initiated by a notice to appear that goes before the immigration judge and the and the applicant, the noncitizen says, well, I'm not going to challenge movability, but I want to apply for asylum or withholding or torture protection. That in the ordinary course, right. The final removal order in that case isn't issued until the board rules. Actually, under the regulations, there's two things that can trigger it. Either the failure to appeal to the board in a timely manner or the board rules. Then that order becomes final. But that's not like the case we see here, where the DHS final administrative removal order. Sometimes you'll see this referred to as a pharaoh, your honors. You could have that was issued by DHS before it got to the immigration judge. Right. You could have it could happen in several different ways. This guy, he's a he's a felon, just got out of jail. So he's in these expedited proceedings and he's already been ordered removed. And that's and so there's no new order removal. Or he could have been somebody who had an order of removal and then left the country and comes back. And then he gets in these expedited things and he gets another order of removal. Right. So that's so you have several situations, I think, where you can get there's an order of removal in place and then there's expedited procedures to actually enforce the previous order of removal. Right. Right. I think you're referring to reinstated removal orders, your honor. And that is a circumstance where the order goes, like you said, first, there's an old order and then DHS wants to reinstate that order. It's not reinstated, right? This was not correct, your honor. This isn't a reinstatement case. This is another situation. That's another situation where the cat claim might not be made in the proceedings that got the first order of removal or in this case. So either either you had an earlier order removal or this fellow is just in expedited proceedings because of his felony situation. In either of those cases, you're not going you're going to have the cat claim will could be handled separately, right? He goes and says, I want I have I have I have fears and put me into the what do you call them withholding withholding only proceedings? Yes, your honor. Withholding only proceedings. Yeah, these are I suppose you could call them trailing proceedings, whereas the people already already exists. But we can't remove him until we've determined whether his application for torture relief should be granted. And that's what that's what happened here. Unfortunately, where do you get the thing, the idea that somebody in that position has to file a claim challenging the cat decision when that comes after the final order of removal? Well, our claim, your honor, is that they have to challenge the final order of removal within 30 days, and that's, of course, from the statute that puts the 30 day timeline on it. Whether they want to also challenge the torture determination, that can be included in a petition for review of the underlying removal order, so long as it's timely, because of the so-called zipper clause. I'm referring to eight USC section 1252. This is the statute that sets out the deadline, the 30 deadline. Years have passed. The circumstances giving rise to the cat problem may not arise until after the final order of removal, correct? Yes, your honor, like I did here. Well, yeah. So if you have a situation where the facts that give rise to the cat claim don't happen at the time of the final order of removal, how can how can he be bound to have to some kind of protective order about facts that don't exist yet? Your honor, the statute says 30 days, and the Supreme Court has been very clear that that 30 days can't be told. Well, 30 days for a challenge of a B1, it's for A1. It doesn't say 30 days for A4. I don't understand the reference. OK, there's a separate provision for cat challenges. And in this circuit, I believe Maldonado says a 1252 A4 provides jurisdiction for cat claims. OK, the 30 days refers to A1. OK, the 30 days is in B and it refers to A1. Right, your honor, I don't know that that changes the outcome here because we still have to have the under the statute, we still have to have the petition for review from the final order of removal. And the and the reason this becomes apparent is because in Nasrallah and in Johnson, the Supreme Court has now made very clear that I think the language was, you know, the withholding only doesn't affect or alter the removal. Let me just ask you, what was in your view, what was he supposed to do in 2019? He gets this final order of removal. He should have filed a petition for review and in this court within 30 days. Yes, your honor. And then what should he have said? Stay this petition because I'm seeking cat relief. I'm not I'm not sure because he's not even challenging this. I mean, he doesn't have he's he committed an aggravated felony of, you know, murder. He's removable. Yes, your honor. I think if he wants to challenge something in the process, he has to make that challenge in a timely manner. But you would have him. I just want to make sure I understand, because this would actually. You know, I think change significant process, he's in the courts, you would have him file a petition within 30 days here. And also file some kind of accompanying motion to stay that pending the BIA, the IJ and BIA's consideration of the cat claim. OK, perhaps. Can I interrupt her because you keep saying perhaps or maybe, can you just let us know, is your position that they just can't challenge a cat claim in a circumstance like this? Because I think that may be the conclusion that the Second Circuit arrived at in the in the sort of similar situation where you have a. A withholding only proceeding, I think that was a reinstatement, but but I think I think the panel there came to the conclusion you just can't challenge. And if that's the case, I mean, just tell us, is that is that is that your view that you can't not really challenge the order removal because it because you're not challenging it. And your 30 day clock is going to run. You can't challenge this. Is that your view? We just need to know that. All right. It is partially my view. And I say partially, I apologize, Your Honor. The Second Circuit, I think you're referring to Bakhtibhai Patel. This is the case. They they confronted the reinstatement. They said you could challenge the denial of torture relief if it was folded into the previously filed timely petition for review. So there was a win. There is a window there where you could you could challenge it. But I do recognize the logistical problem there that the torture claim comes later. I'm remembering what the judge was saying there. They thought that there was incorrect Second Circuit precedent, but he was bound by it. And if he and if he wasn't bound by it, then his his reading or the court's reading there was that you just could not challenge. I thought there was something about the fact that they just didn't think you could challenge. I thought I kind of offered a reason why maybe you shouldn't be able to challenge these. That am I misremembering what Second Circuit said? The only thing I remember from that one is that they did reference the quote unquote zipper clause, where if there were other contingent challenges, the I think I think this is we need to just get some clear answers to this because it affects a lot of people, including this this this petitioner. So if he were to if he were to file within 30 days and there's no ongoing cat proceedings, your view is he files here within 30 days. And then what happens? He wants that. He wants to see Kat in in in front of the IJ and BIA. And he's in the process of doing that. But what happens when he comes here within that first 30 days? He files here to preserve his challenge to the underlying order, and then to the extent anything goes on in those cat proceedings, he can bring that to the court because it would be wrapped into that previous challenge under the quote unquote zipper clause. But then we get to Judge Van Dyke's question, which is at that point, you know, so that case then has been sitting here, stayed for two, three years. The cat proceedings in the BIA end and he loses. Can he then come back to us and say, OK, now I want you to review my cat claim or is that are we precluded from doing that because it's not connected to the final order of removal? I think because assuming the petition is still open, like I said, it's still pending. Right. So that petition is timely. And under 1252 B9, he would, I think, be able to wrap in his torture proceedings and say, yeah, you should be able to review that in addition to. So so it sounds like it sounds like this would be something like in the habeas context and maybe you are familiar with that, but in the habeas context, because of the Supreme Court's Pace decision, you'll have a protective filing because you're not really sure whether it's the right time to file, but have a protective filing and that'll just be stayed while you go and do a bunch of other stuff. In that instance, it's you go back to state courts and you do a bunch. Then you come back years later. Is that so you under this this kind of system, you're basically you'd file a petition, essentially appeal to our court, and then you just immediately ask it to be stayed while you finished your cat or your withholding proceedings? I think that's where the statute leads us, Your Honor, because of the deadline. So let me we're running out of time. If I can follow up on that. Don't worry about the time is your position. Your position, I think Judge Rossani was asking about. Subsection four, whatever, a four, you know, twelve fifty two, a four, which says that in your position is that that is not an independent grant of jurisdiction, is that correct? Correct. Now, what that's not what the dissenters thought in in Nassala, right? The dissenters thought that that's what the Supreme Court was actually basing, that the majority of Supreme Court was basing. It's it's the majority of Supreme Court's not super clear about that in Nassala, but the dissenters are pretty clear. I can read you the section if I if I find it. And hasn't the Ninth Circuit been clear, unlike the Second Circuit, that a four is a granted jurisdiction? That I think I think that is Ninth Circuit law, but I don't know that I think it predates Nasrallah and Johnson, which is why we're raising the argument. Right. But when you do that, when you're coming in and we have circuit precedent that is on point, you have to explain why that circuit precedent is clearly a reconcilable with intervening Supreme Court precedent. Part of the frustration that I think I'm having in this case is that what you're asking for is unclear and what is being put forward to us seems like a significant change in the law in three pages of briefing with no acknowledgement of the Miller versus GAMI standard and no acknowledgement that what you're asking for is a significant change in law. You're entitled to ask for a change in law. But I think it was incumbent upon the government in this case to set forth what existing circuit law was and then to explain more clearly why these new Supreme Court cases are clearly reconcilable, because we do have case law that has a four as a jurisdictional basis. I also, Your Honor, I apologize. I also want to say, you know, I'm confused as to this new idea of these protective cases, because you have had situations where the facts, the torture happens after a final order of removal. And then the person comes back, you know, the reinstatement cases, or it may be that he didn't doesn't get any death threats until after his final order of removal. So I'm not sure how the state proceeding is going to affect those those cases. This all seems up in the air. I'm not sure that the government has thought through what should be done after Nasrullah. I think it would depend, Your Honor, on the form of the proceedings that a returning applicant would be placed in. But what you're saying here to me sounds like there are some cases where whereas Judge Van Dyke says that you just think there is no jurisdiction for for review of the cases of these people seeking cat relief. There are some categories of cases where you think there is no review and even the state proceeding won't help. Yeah, I've sent a timely petition for you, Your Honor. I get that as our position. Just to be clear here, you're saying if he had put down the placeholder and then had gone through the BIA process and lost, he would be able to seek. We would be able to have jurisdiction over that cat claim, provided he had just filed that petition within 30 days back in 2019. Yes, Your Honor. All right, if there are no other questions, thank you very much for your time. Thank you, Rebuttal. Thank you, Your Honor. Given the liberty interest at stake, specifically protection from Barala and Johnson to mean that challenges to an administrative removal order must be first initiated through a petition for review, even though the petitioner is not asking the court to review the actual removal order, they go against the purpose of the of the Convention Against Torture. The Convention Against Torture is meant to protect against torture. It's not meant to make the petitioner jump through hoops that don't necessarily make sense outside of the normal appellate review scope of this process. Normally in proceedings outside of this specific case, the process is started with a request for a credible fear interview and with a subsequent, if denied, with a subsequent review by the BIA and then a petition for review with this court. In this specific case, with an administrative order of removal, not from an immigration judge, the situation gets complicated because, as you said, what the government's asking us is to essentially put the cart before the horse. And it doesn't follow that that was the intent of the Supreme Court to place an undue burden on this court by having to hold these placeholder cases and by having the petitioner go through an additional step simply to satisfy this 30 days when he is still being responsible and filing a petition for a credible fear interview or filing for a withholding through an immigration judge. Something was done. He didn't just leave everything as is and a year later request a credible fear interview. Things were done timely. However, this new step was missed. And I don't believe that that was the intent of the Supreme Court to be to make this holding in Nasrallah and Johnson amount to a gotcha type of situation where jurisdiction is just not available to the petitioner because of this 30 day time. And thank you, Your Honors. Thank you, counsel. Thank you both sides for your arguments. This matter is submitted and we'll stand in recess until Friday morning.
judges: BRESS, VANDYKE, Restani